**PRINTWORKS, INCORPORATED,**
Plaintiff,

v.

**DORN COMPANY, INCORPORATED,**
Defendant.

Civ. A. No. 93–3348.

United States District Court,
E.D. Louisiana.

Oct. 17, 1994.

**437**

Elizabeth Marie Williams, New Orleans, LA, Kenneth Victor Faherty, Metairie, LA, William T. Abbott, Jr., New Orleans, LA, for plaintiff.

Peter Joseph Butler, Richard G. Passler, Locke, Purnell, et al, New Orleans, LA, for Ernst W. Dorn Co., Inc.

## ORDER AND REASONS

FELDMAN, District Judge.

Before the Court are two motions: defendant's motion in limine to restrict plaintiff's recovery to $45,000, and defendant's motion to remand for lack of subject matter jurisdiction. For the reasons that follow, the motion to remand is GRANTED.

### Background

The plaintiff, Printworks Incorporated, purchased a Fully Automatic Screen Printing Cylinder Press manufactured by Sakurai, from Dorn Company. Due (apparently) to the heat and humidity in New Orleans, the press, it is claimed, does not work properly, and suffers from redhibitory defects. Efforts to repair the machine were unsuccessful. At first glance, this case appears to be a typical redhibitory action for a malfunctioning printer. Any typicality rapidly vanishes in the face of the unique set of facts that have compelled this Court's inquiry into whether it has subject matter jurisdiction.

In September 1993 plaintiff filed suit in state court, seeking "reDibitory [sic] remedies of either a recission [sic] of the sale or a reduction of the purchase price." The prayer of the complaint, in compliance with Louisiana law, did not ask for a specific amount of monetary damages.[1] Shortly thereafter, defendant removed to federal court on the basis of diversity jurisdiction, alleging simply that the amount in controversy exceeded $50,000.[2] Dorn then moved for summary judgment on the ground that it was not the proper defendant. Dorn said it was not the seller, and its motion was granted as unopposed on March 17, 1994. In an *ex parte* filing entitled "Motion to Vacate," Printworks then moved the Court to vacate the grant of summary judgment and suggested a remand of the case to state court. Printworks consciously included the following jurisdictional statement in its motion:

On October 12, 1994 [sic] the defendant noticed the removal of this matter to the court based upon diversity jurisdiction under 28 U.S.C. section 1332. Since preparing the case Printworks, Inc., plaintiff, cannot prove damages of greater than $45,000.00, exclusive of interest and costs. [sic]

This Court granted the motion to vacate, adding that "[a]s to remand, the Court has no such motion before it." The matter was apparently forgotten by Printworks. No formal motion to remand was filed. At the pretrial conference that was held six months later, Dorn claimed that its maximum exposure was $45,000 because Printworks' judicial admission estopped it from demanding more. Any such limitation implicated jurisdiction, and so the Court ordered the parties to brief subject matter jurisdiction before trial. On September 26, 1994 the Court continued the trial date in order to have an evidentiary hearing on the circumstances regarding the

---

1. La.C.Civ.Pro. art. 893 states that no specific monetary amount of damages shall be included in the prayer for relief. General allegations that the amount satisfies or does not satisfy some requirement (for example, the jurisdictional amount in controversy) are sufficient.

2. There has never been any dispute that complete diversity exists: plaintiff is a corporation domiciled in Louisiana and defendant is incorporated in California.

affirmation of nonjurisdictional damages. In its pre-hearing memorandum, Printworks submitted affidavits that disclaimed any suggestion of deceitful pleadings and sought to disavow its earlier damages statement. But Sandra Miller, the president of Printworks, affirmed that when she was asked by her counsel to evaluate provable damages she told Elizabeth Williams (Printworks' former counsel) that the problem could be resolved for $45,000 by enclosing the printer so as to protect it from our climate. Ms. Williams prepared the motion to vacate with the suggestion of remand and included the damages statement at issue. Ms. Miller now claims, only after the question of jurisdiction was raised (and after changing counsel), that her assessment of the damages was incorrect.

Elizabeth Williams and Sandra Miller testified at the evidentiary hearing on the Court's jurisdiction. Ms. Williams' said that she and Miller talked about damages even before remand was an issue. Ms. Miller's testimony plainly contradicted her sworn affidavit; she would now have the Court believe that she knew all along the Printworks' total damages exceeded $45,000, but that the printer's problem alone could be fixed for $45,000 by building a climate-controlled room around the printer. However Ms. Miller also claimed that sometime in July or August of this year, two experts only then concluded that the enclosure solution would not resolve the printer's problem. Her testimony, which was wholly contrary to her straightforward affidavit, and internally inconsistent itself, seems hardly believable.

Based on Ms. Williams' candid story and Ms. Miller's self-serving incredulousness, the Court made the following oral findings of fact: (1) that, when preparing the case, Miller and Williams discussed the extent of the damages that Printworks suffered even before remand was at issue; (2) that Miller concluded with her lawyer that Printworks' damages could not exceed $45,000; (3) that

Miller knew that Williams was making that representation to this Court in an official proceeding; and, (4) that Miller knew exactly what she was doing because she herself is a lawyer.[3]

This brings us to the present near-comic situation, in which the defendant has moved for remand by emphasizing plaintiff's earlier sworn statement in support of remand but plaintiff, under the direction of new counsel, disavows the prior sworn statement and now claims damages in excess of $45,000 to assert that defendant's removal was indeed proper.[4]

## I. Challenges to the Amount in Controversy: The Law

### A.

■ Both parties bolster their arguments by invoking notions of equity; they passionately assert that the lapses of counsel should not be visited upon the other party, that one party should not be allowed to spring an issue upon the other after having concealed it for months. These arguments appear sensible, but they conveniently skirt the real issue. Subject matter jurisdiction is not a question that invites the exercise of a court's discretion. Equity is not an informing consideration. Diversity jurisdiction under 28 U.S.C. § 1332 traces directly to Article III of the Constitution. We are courts of limited jurisdiction. Jurisdiction is an absolute; it either exists, or it does not. If it does not, 28 U.S.C. § 1447(c) mandates remand to state court.[5] *See Winnier v. Shoney's Inc.*, 1993 WL 322977 (E.D.La. Aug. 16, 1993) (argument based on judicial economy is "simply not responsive" to the issue of remand, which is mandated when jurisdiction does not exist).

■ It is well-settled that the question of subject matter jurisdiction snapshots the complaint at the time of removal. *Chadwick v. Shell Oil Co.*, 828 F.Supp. 26, 27 (E.D.La. 1993). Jurisdiction may not be defeated by

3. The Court found the question as to whether Miller was a lawyer in good standing to be irrelevant.

4. In papers, Dorn correctly makes much of the need for parties to be truthful in their representations to the Court.

5. 28 U.S.C. § 1447(c) provides in part: "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."

post-removal events. *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 845 (1938). Ordinarily, attempts by plaintiffs to alter the amount in controversy do not affect jurisdiction. However, a different situation arises when later events clarify a previously uncertain jurisdictional issue. *See Asociacion Nacional de Pescadores v. Dow Quimica* 988 F.2d 559 (5 Cir.1993) *cert. denied,* —— U.S. ——, 114 S.Ct. 685, 126 L.Ed.2d 653 (1994).

In *Dow Quimica,* 700 Columbian fishermen filed suit against a chemical company for damages caused by a chemical spill. Plaintiffs claimed economic losses and some minor personal injuries. Because of Texas law, the plaintiffs did not ask for a specific amount in damages. *Dow Quimica,* 988 F.2d at 562. Defendants removed to federal court, alleging generally that the amount in controversy exceeded $50,000. Plaintiffs then moved to remand; their lawyer submitted an affidavit which swore that no individual fisherman suffered a loss greater than $50,000.[6]

Because the original complaint did not specify the amount of damages, the Court of Appeals reasoned that the post-removal affidavit was an attempt to clarify, rather than amend or alter the original jurisdictional amount. Therefore, in support of its analytical methodology, it wrote "the court is still examining the jurisdictional facts *as of the time* the case is removed but the court is considering information submitted after removal." *Dow Quimica,* 988 F.2d at 565 (emphasis original). The court then went on to consider other indicators of the jurisdictional amount, and concluded that the burden of proving proper jurisdiction had not been met because

(1) the complaint did not specify an amount of damages, and it was not otherwise facially apparent that the damages sought or incurred were likely above $50,-000; (2) the defendants offered only a conclusory statement in their notice of removal that was not based on direct knowledge about the plaintiffs' claims; and, (3) the plaintiffs timely contested removal with a

sworn, unrebutted affidavit indicating that the requisite amount in controversy was not present.

*Dow Quimica* has been described as "narrowly drawn and circumscribed." *Marcel v. Pool Co.,* 5 F.3d 81, 84 (5 Cir.1993). Shortly after *Dow Quimica* and *Pool,* the Fifth Circuit dealt with an ostensibly similar case but held that the affidavits of plaintiffs' attorneys would not defeat removal. In *De Aguilar v. Boeing Co.,* 11 F.3d 55 (5 Cir.1993), plaintiffs filed a wrongful death action in Texas state court after a 1986 airplane crash. Again, plaintiffs did not specify their damages in the complaint. Boeing removed to federal court. Plaintiffs, relying upon *Dow Quimica,* moved to remand and supported their motion with the affidavits of their attorneys stating that the damages did not exceed $49,000 for each plaintiff.

The Fifth Circuit affirmed the district court's denial of remand; it distinguished *Dow Quimica.* The court said that it was facially apparent that the amount in controversy exceeded $50,000 at the time of removal (because of factors such as wrongful death, terror in anticipation of death, loss of companionship, and funeral expenses). *De Aguilar,* 11 F.3d at 57. The court added that "the necessary predicate for consideration of the attorney affidavits under *Dow Quimica* is absent in this case and, consequently, the district court properly disregarded the affidavits." *Id.*

The court also pointed out that even if it were not facially apparent that the damages exceeded $50,000, the removing party offered evidence that rebutted the affidavits of plaintiffs' attorneys. *Id.* at 57–58. Specifically, the court was moved by Boeing's evidence that other similar claims resulted in awards in excess of $50,000 and that the same plaintiffs had claimed damages of $5,000,000 in other courts for the same injuries. *Id.* at 58. The court also commented that "the affidavit of a lawyer without personal knowledge of the extent of each of the plaintiffs' claims sheds little, if any, light on the actual amount

---

**6.** Other issues, such as diversity of parties and fraudulent joinder, were central to the *Dow Qui-* *mica* decision but are not germane here.

in controversy." *De Aguilar*, 11 F.3d at 57.[7] Finally, the Fifth Circuit concluded that plaintiffs may have been "engaged in artful post-removal pleading in order to avoid the consequences of federal *forum non conveniens* law," adding that diversity jurisdiction is not subject to "delimitation by such imaginative post-hoc tactics of litigants." *Id.* at 58.

### B.

■ It is apparent from *Dow Quimica* and *De Aguilar* that plaintiff attorney affidavits that the amount in controversy is below $50,000 do not automatically bind plaintiffs to such an amount. But given the necessary predicate, that satisfaction of the jurisdictional question is not facially apparent, courts will look at a lawyer's affidavit in the context of other evidence regarding the amount in controversy.

■ Other cases similarly support the conclusion that when the affidavits, affirmations, or statements of the party who seeks remand fall short of stipulating that the claimant will not seek more than the jurisdictional amount, jurisdiction must be assessed with reference to all the evidence. *See Relf v. Wal–Mart Stores*, 1992 WL 245629 (E.D.La. Sept. 15, 1992) (remand was not proper where, in spite of plaintiff's claim that damages were less than $50,000, plaintiff's settlement demands indicated a higher valuation of the case and plaintiff "has not stipulated that he will limit his claim to an amount less than $50,000."); *Manuel v. Wal–Mart*, 779 F.Supp. 56 (W.D.La.1991) (jurisdiction is lacking where plaintiff stipulated, more than a year after removal, that damages would be less than $50,000 and no specific amount was requested in the complaint.); *Hall v. Travelers Ins. Co.*, 691 F.Supp. 1406 (N.D.Ga.1988) (unless plaintiff's attorney stipulated that he would not seek attorney's fees resulting in a total recovery in excess of the jurisdictional amount, remand would not be granted on the strength of the attorney's statement that his fee request would not give rise to a verdict greater than the jurisdictional amount.); *Robinson v. Quality Ins. Co.*, 633 F.Supp. 572 (S.D.Ala.1986) (an attempted amendment to the complaint asserting that damages were less than the jurisdictional amount, though not properly filed, supported remand where there was no hard evidence to the contrary.).

### II. Questioning the Amount in Controversy: Application

### A.

■ No matter how "narrowly drawn," this case resembles *Dow Quimica* more than *De Aguilar*. Plaintiff's petition in redhibition informs only that the printing press is for screen printing, offering no clues as to the model of the press involved, its capacity, its value, or its purchase price. The relief sought is rescission of the sale or a reduction in the purchase price, without further elaboration.[8] Given these sketchy claims, and unlike an intuitively larger claim involving wrongful death and related damages, it is certainly not facially apparent that the damages could exceed $50,000. Nor is the Court able to conclude that damages necessarily fall below the jurisdictional amount. Therefore, this Court finds that it is necessary to examine other evidence, received post-removal, which sheds light on the amount in controversy as it might have existed at the time of removal.

### B.

■ Printworks points out that the total sale contract involved approximately $240,000 worth of equipment, with a $95,000 price allocated to the printing press in question. From those numbers, Printworks incorrectly concludes that it cannot be said that it is legally certain that the jurisdictional amount is below $50,000. But the governing standard in this case, adapted from *De Aguilar*, is whether or not a preponderance of the evidence that shows that removal was prop-

---

**7.** The statement put in by Ms. Williams, however, was based upon prior consultation with her client and upon information given to her by the client.

**8.** Under article 893, such pleading is entirely proper.

er. *See De Aguilar*, 11 F.3d at 58.[9] It is also instructive to observe that the mere fact that the press cost more than $50,000 does not end this Court's inquiry—the amount in controversy could be a small fraction of the total purchase price. The Court can and must consider other evidence of the amount in controversy at the time of removal, as the case literature teaches.

### C.

■ The first statement of any kind concerning the amount in controversy appeared in Dorn's notice of removal, and consisted of a simple declaration that the amount exceeded $50,000. Typically, one cannot place great weight upon such a statement because defendants are ill-situated to evaluate damages, at least not at that point in the life of a case. It is merely the statutorily driven catch-phrase to get here and out of state court. Such statements are more likely to be persuasive in cases where the "crucial facts supporting jurisdiction" are known to the defendant. *Dow Quimica*, 988 F.2d at 566. Printworks rather superficially argues that Dorn, fully aware of the purchase price of the press, was in a better position than the defendants in *Dow Quimica* to assess damages. That argument could be correct, but it misses the point. The crucial jurisdictional facts in this case are not only the values of the equipment purchased, but also the cost of remedying the alleged defects. There is no evidence that Dorn was aware of that kind of information.

Printworks, through the efforts of Ms. Miller, evaluated the remedy and its cost, and was in the unique position to consider all the relevant factors to assess its damages. The evidence presented at the hearing and from the affidavits tells the story: Williams and Miller specifically discussed provable damages and Ms. Miller concluded that they could not exceed $45,000. They did so before the remand issue was given life. Such a set of facts starkly contrasts with those of *De Aguilar*, where the plaintiffs' attorneys' affidavits were done without personal knowledge of the injuries suffered by the plaintiffs. For this reason, the Court places great weight upon Ms. Miller's sworn and disinterested assessment of the damages.

Moreover, the Court has no strong evidence before it that demonstrates or suggests the damages are greater than $45,000. Testimony was given by Miller that two experts inspected the press and concluded that the proposed solution of a climate-controlled room would not work, but the Court has seriously questioned the credibility of her changed testimony and continues to do so. This purported expert opinion was not even supported by statements from the experts themselves, nor are they listed as expert witnesses. And testimony that the inspections, made almost one year after removal of the suit, revealed damages in excess of $50,000 do not necessarily clarify whether this Court had jurisdiction at the time of removal. Rather, the deliberate representation to the Court that damages did not meet the jurisdictional amount, based upon discussions between Miller and counsel, is convincing and credible evidence that jurisdiction was not proper at the time of removal. It clarifies that the entire value of the press was not in controversy, it overwhelms Dorn's naked uninformed removal assertion that the amount of damages could exceed $50,000, and it more clearly implicates the amount of the damages at the time of removal. For these reasons, the Court finds that the preponderance of the evidence demonstrates that subject matter jurisdiction did not exist at the time of removal.[10]

---

**9.** Printworks mistakenly applies the legal certainty test, as discussed in *St. Paul Mercury*, where the Supreme Court held that a defendant wishing to remand a suit in which the plaintiff originally claimed an amount sufficient to confer jurisdiction must show to a legal certainty that the claim is for less than the jurisdictional amount. *Id.* at 289, 58 S.Ct. at 590. Here, the case was originally filed in state court and the damage claim was ambiguous, as in *De Aguilar*. The only postural difference between the two cases is the fact that Dorn, the removing party, is no longer championing removal. Therefore, the Court applies the standard used by the Fifth Circuit in *De Aguilar*.

**10.** The Court does not reach the novel and rather eccentric issue of limiting the damages to $45,000 but retaining jurisdiction, except to note Dorn's reliance on *Oder v. Buckeye State Mut. Ins.*, 817 F.Supp. 1413 (S.D.Ind.1992) is misplaced.

Accordingly, Dorn's motion to remand the case to state court is GRANTED.